MACPET, Appellant,

v.

OIL FIELD MAINTENANCE COMPANY
et al., Appellees.

No. 1084.

Court of Civil Appeals of Texas,
Corpus Christi.

June 10, 1976.

N. Wyatt Collier, Dohoney, Collier, Cartwright & Wandel, Houston, for appellant.

Lev Hunt, Kleberg, Mobley, Lockett & Weil, Corpus Christi, Robert P. McGuill, Refugio, for appellees.

## OPINION

NYE, Chief Justice.

This is a venue suit. Oil Field Maintenance Company brought suit against MACPET, who was domiciled in Harris County, Texas, upon a debt alleged to be due and owing to Oil Field Maintenance Company. The suit was filed in Refugio County, Texas. MACPET duly filed its plea of privilege to be sued in Harris County, the county of its residence. Oil Field Maintenance Company controverted the plea of privilege alleging venue was maintainable in Refugio County under Subdivisions 5, 23 and 29a of Article 1995, Tex.Rev.Civ.Stat.Ann. MACPET's plea of privilege was overruled by the trial court, from which order and ruling it brings this appeal.

The record shows that Padre Drilling Company had originally contracted to drill an oil well (Griffith # 2) located in Calhoun County for MACPET. The well location became impassable due to heavy rains caused by Hurricane Fern. Padre Drilling Company's employee, M. A. Bowling, received permission from MACPET to obtain a bulldozer to pull in their equipment at the drilling site. Upon receiving the "go ahead" from MACPET, Padre Drilling Company called Oil Field Maintenance Company and employed them to furnish the bulldozer at the particular well site. Bowling told Oil Field Maintenance Company that MACPET would pay them for their services. Oil Field Maintenance Company's daily time sheets were signed by Bowling and other employees of Padre Drilling Company. After the work had been completed, as instructed by Bowling, Oil Field Maintenance Company sent to MACPET an invoice covering the services rendered by them. The invoices covered services beginning September 11, 1971, and ending September 29, 1971, for a total bill of $6,316.50. At the top of the invoice typed in specially, it stated: "This invoice to be paid in Refugio County, Texas."

Upon receipt of this invoice, MACPET wrote to Oil Field Maintenance Company and stated that in regard to the invoice it was their understanding that they (MACPET) would be charged for the use of the equipment on the basis of actual time used and not for all the days the equipment was at the job site. The letter stated: "Time for many of the days shown covers time that the equipment was not in use. We will appreciate either re-issuing this invoice on the basis of actual time of equipment in use or issuing credit memo for the difference between this time and the time charged." This letter was signed by Mr. Britton of MACPET and was introduced into evidence.

Thereafter, another letter was received by Oil Field Maintenance Company from MACPET again in regard to the original invoice. MACPET stated that they had talked to Mr. Bowling of Padre Drilling Company regarding the agreement and in which MACPET advises that the agreement was that they (MACPET) would pay for the equipment on the basis of actual time that the equipment was in use. The letter then outlines the invoice and shows where the

dispute, as to the time the equipment was used, arises.

Again, on May 11, 1973, MACPET wrote Oil Field Maintenance Company reiterating their agreement between Padre Drilling Company's tool pusher, M. A. Bowling, Oil Field Maintenance Company and itself. The letter stated in part:

"Mr. Bowling called me on September 12, 1971, advising that the condition of the road to the rig was such that trucks could not get in to the rig and requested permission to hire a bulldozer to pull in supply trucks. I agreed to this request, but only gave permission to use a dozer to pull in equipment on September 12 and 13. We authorized no further use of a dozer until September 25, when Mr. Joe Corpening authorized such use to pull in logging trucks and casing to the location.

MACPET therefore authorized and is only obligated to pay for the bulldozer during its use of 5 hours on September 12 and 10 hours on September 13. We are also obligated to pay for the use of the dozer for 18 hours on September 25.

\* \* \* \* \* \*

We can only be responsible for the work which we authorized. . . ."

■ Thereafter, Oil Field Maintenance Company brought suit against MACPET and Padre Drilling Company. (Padre did not file a plea of privilege and is actually an appellee in this appeal.) MACPET filed its plea of privilege to be sued in the county of its residence, Harris County, alleging that there was no exception to the exclusive venue. Thereafter, Oil Field Maintenance Company filed its controverting plea claiming that venue was proper in Refugio County under the provisions of Subdivisions 5, 23 and 29a of Article 1995, Tex.Rev.Civ.Stat. Ann.

Subdivision 5 of Article 1995, supra, provides:

"5. Contract in writing.—If a person has contracted in writing to perform an obligation in a particular county, expressly naming such county, or a definite place therein, by such writing, suit upon or by

reason of such obligation may be brought against him, either in such county or where the defendant has his domicile."

In order to maintain venue under Subdivision 5 of Article 1995, Tex.Rev.Civ.Stat. Ann., the plaintiff must prove: 1) an obligation in writing; 2) the execution by the defendant; and 3) that it is performable in the county of the suit. *Public Service Life Insurance Company v. Copus*, 494 S.W.2d 200 (Tex.Civ.App., Tyler 1973, no writ); *Hess v. Young*, 160 S.W.2d 574 (Tex.Civ. App., Waco 1942, no writ); *Pitt Grill, Inc. v. Albert*, 432 S.W.2d 160 (Tex.Civ.App., Dallas 1968, no writ). Proof of the existence of the cause of action is not required. *Petroleum Producers Co. v. Steffens*, 139 Tex. 257, 162 S.W.2d 698 (Tex.Com.App.1942, opinion adopted); *Public Service Life Insurance Company v. Copus, supra*.

■ The trial was before the court without a jury. No findings of fact or conclusions of law were requested or made. In testing the validity of the trial court's judgment, we assume that the trial court found every disputed fact in such a way as to support its judgment. *Construction And General Labor Union, Local No. 688 v. Stephenson*, 148 Tex. 434, 225 S.W.2d 958 (1950); *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609 (1951).

MACPET contends in effect that there was no written contract for performance by MACPET of any obligation in Refugio County and that MACPET did not recognize, acquiesce or agree to Oil Field Maintenance Company's claim to be paid in Refugio County.

■ It is not necessary in order to constitute a "contract in writing" that the agreement be signed by both parties. One party can make an offer, the other can acknowledge it in writing and his acceptance by his act, conduct or acquiescence completes the agreement. *Public Service Life Insurance Company v. Copus, supra; Trans-South Hydrocarbons v. Trinity Industries, Inc.*, 419 S.W.2d 662 (Tex.Civ.App., Dallas 1967, no writ); *Vinson v. Horton*, 207 S.W.2d 432 (Tex.Civ.App., Texarkana 1947, no writ); *Dowdell v. Ginsberg*, 244 S.W.2d 265 (Tex.

Civ.App., Fort Worth 1951, no writ); *Harrison v. Facade, Inc.*, 355 S.W.2d 543 (Tex. Civ.App., Dallas 1962, no writ).

■ There have been a number of cases that have been decided under Subdivision 5 of Article 1995 involving written invoices which contained the statement relating to the payment of the account in a designated county. Where the party seeking to maintain venue under Subdivision 5 proves that the written invoice itself is a part of the consummated contract, then the statutory exception (Subdivision 5) is made applicable. See *Public Service Life Insurance Company v. Copus, supra; Hurlbut v. Lyons*, 405 S.W.2d 398 (Tex.Civ.App., El Paso 1966, writ dism'd); *Vinson v. Horton, supra; Dowdell v. Ginsberg, supra; Harrison v. Facade, Inc., supra.* See also *Barnwell v. Fox & Jacobs Construction Company*, 469 S.W.2d 199 (Tex.Civ.App., Dallas 1971, no writ).

Here, Padre Drilling Company's agent contacted Oil Field Maintenance Company to do some work for MACPET. Oil Field Maintenance Company did the work for MACPET, invoicing them for the use of the equipment at a specified price payable in Refugio County. The signed letters, together with the invoice, ("payable in Refugio County") consummated a written agreement between MACPET and Oil Field Maintenance Company; i. e., Oil Field Maintenance Company was to furnish certain men and equipment, at a specified place, and at a definite price per hour, with such obligation being payable in Refugio County and only the number of hours that were to be charged for the equipment used was in dispute.

■ The justness of the account which is the subject of the specific dispute in this lawsuit is not before this Court at this time. The question of the amount owed by MACPET to Oil Field Maintenance Company is, of course, the subject of a defensive plea by MACPET that will be reached on the merits of the case. It is not subject to inquiry at the venue hearing. It is the rule that in an action on a written obligation performable in the county where suit is filed, disputed matters which go to the merits of the cause of action will not be inquired into at the hearing on the question of venue only. *Harvey v. Bain*, 140 Tex. 375, 168 S.W.2d 234 (Tex.Com.App.1943, opinion adopted); *Harry Newton, Inc. v. H. Richards Oil Company*, 385 S.W.2d 893 (Tex.Civ.App., Austin 1965, no writ). See also *Ocean Systems, Inc. v. Educational and Research Devices, Inc.*, 493 S.W.2d 641 (Tex.Civ.App., Amarillo 1973, writ dism'd); *VanHuss v. Buchanan*, 508 S.W.2d 412 (Tex.Civ.App., Fort Worth 1974, writ dism'd).

At the venue hearing, all that Oil Field Maintenance Company had to prove was an obligation on the part of MACPET to pay them; that the obligation to pay was in writing and signed by MACPET; and finally, that such obligation was payable in Refugio County. All of these conditions have been met.

■ There are a number of cases in which the invoice relied upon for venue purposes came after the contract was completed. The completed contract may not be enlarged or altered later (without a new and independent consideration) to include a venue provision by a later invoice. See *Barnwell v. Fox & Jacobs Construction Company, supra; Knapp Corporation v. Lofland Company*, 466 S.W.2d 847 (Tex.Civ. App., Dallas 1971, no writ); *Trans-South Hydrocarbons Company v. Trinity Industries, Inc., supra; K. T. Lease Service, Inc. v. Alamo Welding & Boiler Works, Inc.*, 431 S.W.2d 58 (Tex.Civ.App., San Antonio 1968, no writ); *Ferguson v. Sanders*, 133 S.W.2d 806 (Tex.Civ.App., Dallas 1939, no writ); *Back v. Radio City Distributing Co.*, 286 S.W.2d 672 (Tex.Civ.App., Dallas 1956, writ dism'd); *West Flour Mill, Inc. v. Vance*, 430 S.W.2d 232 (Tex.Civ.App., Tyler 1968, writ dism'd).

■ For the reasons stated, we are of the opinion that there was sufficient evidence for the trial court to (impliedly) find that by the invoice and the signed letters, the defendant had obligated itself to Oil Field Maintenance Company in writing and had agreed to pay for such obligation in Refugio

County, Texas. *Hurlbut v. Lyons, supra; Public Service Life Insurance Company v. Copus, supra; Harrison v. Facade, Inc., supra.*

It is not necessary for us to consider the other venue exceptions. The judgment of the trial court is AFFIRMED.