**J. H. BEALL, d/b/a Beall Gin, Appellants,**

**v.**

**HARDWICKE–ETTER COMPANY,**
**Appellees.**

**No. 4956.**

Court of Civil Appeals of Texas,
Waco.

Nov. 12, 1970.

Rehearing Denied Dec. 8, 1970.

Bradbury, Tippen & Cross, Abilene, for appellants.

Gillespie & Gillespie, Sherman, for appellees.

## OPINION

HALL, Justice.

This is a venue case. The plaintiff, Hardwicke-Etter Company, brought the suit in Grayson County, Texas, where it maintains its home office, alleging that defendant was indebted to it for the balance owing on a contract for the construction of a cotton gin. The defendant filed his plea of privilege to be sued in Coleman County, the county of his residence. The plaintiff controverted the plea of privilege, contending that Subd. 5, of Article 1995, Vernon's Annotated Texas Civil Statutes, permitted venue in the county of suit. After a hearing without a jury, the trial court overruled the plea of privilege. We affirm.

Findings and conclusions of fact and law were neither requested nor filed. Therefore, we must presume that all necessary fact findings were made by the trial court in support of its judgment. 4 Tex.Jur.2d 330, Appeal and Error—Civil, Sec. 806.

Subdivision 5 of the venue statute provides that if a person has contracted in writing to perform an obligation in a particular county expressly naming the county or a definite place therein in the writing, then suit upon that obligation may be brought against him in that county.

The defendant's single complaint on appeal is that there is no probative evidence in the record to support the implied finding that he contracted in writing to make payment in Grayson County.

On June 13, 1968, after negotiations with plaintiff's sales representative, defendant orally agreed to purchase from plaintiff a complete cotton gin plant. Plaintiff was to erect and install the gin and all of its equipment in Coleman County. It was agreed that the gin would be constructed of both new and used parts, for a total "turn-key" price of $99,500. The used parts were to be selected by defendant and supplied by plaintiff from several gins located in the Rio Grande Valley.

In the negotiation, no mention was made of the place of payment, but it was agreed that the defendant "would pay part of it pretty soon and pay the rest of it along" as the gin construction progressed.

Later, on June 13th, defendant signed a so-called "Texas Form Contract" which was prepared by plaintiff and which plaintiff contends is the written contract of the sale in question. Actually, the instrument is a purchase order directing plaintiff to ship to the defendant " * * * soon as ready * * * the machinery or articles herein described. * * *" It provides in part that "the purchaser approves specifications herein contained and agrees to purchase, and upon your acceptance you agree to sell, machinery and/or articles specified and upon terms and conditions herein expressed. * * * Machinery will be located on the purchaser's land. Firm name will be Beall Gin * * * with the following officers and manager: J. H. Beall, owner and manager." The purchase order recites that the price "of the machinery or articles herein sold is to be $99,500;" and that any notes given in payment will "be secured by a chattel mortgage on the machinery or articles herein ordered, as well as by a deed of trust on the gin and all improvements thereon." It also contains the following provisions: "Any suit to enforce this contract or recover damages for breach thereof brought by either party hereto, shall be brought to Sherman, Texas. * * * All payments of money herein required to be made in current funds at Sherman, Texas. * * * This order is made subject to the seller's approval, and is not binding on it until accepted by signature of one of its Executive Officers and upon endorsing such acceptance thereon this order shall at once be and become a contract made by and between the purchaser and the seller. * * * When this order is accepted by the seller, it is understood and agreed that same * * * shall be and constitute the entire contract between the purchaser and the seller * * *."

Although space is provided on its pages, the purchase order does not itemize or describe any "machinery or articles," and does not recite any terms of payment. Additionally, it was never signed by an executive officer of plaintiff. For these reasons, the defendant says the instrument is incomplete and not a valid contract. Defendant's proof was that his only reason for signing it was because plaintiff's salesman said, "We have agreed what we are going to furnish you here, and so we can get started, this is kind of a conditional sales agreement, and we need this in the office so we can get started;" and that the salesman "just wanted something to show the home office so they could get started;" and that he had signed "several of them" for plaintiff on prior deals. Plaintiff's sales manager, who was present when Mr. Beall signed the purchase order, testified that the reason the materials and machinery to be sold were not itemized and described in the purchase order was because, at that time, "We knew what new equipment was going to be furnished, but we had no idea as to what the used equipment would consist of, so it just almost made it impossible to list the equipment that was going to be furnished at that time, because we had no idea what it was going to be." He stated that the purchase order form is

the standard one that plaintiff uses, and that one is normally executed every time the plaintiff sells a gin or gin equipment.

Soon after June 13th, the defendant's son-in-law, who testified that he was defendant's "partner and active business manager" met with representatives of plaintiff in South Texas to view and select parts from used gins. Construction began on the gin in Coleman County in July. Defendant pleaded that the gin was not operative until October 20, 1968.

On June 24, 1968, defendant made a "prepayment" of $35,000. Another payment of $2,250 was made on June 25th. Both were made in Coleman County to a representative of plaintiff. On August 28th, plaintiff mailed its first invoice to defendant. It was for the foundation and floor of the gin, and for the amount of $6,750. It showed that defendant had a credit balance of $30,500. It, and all invoices that followed, recited, "All bills due and payable in Sherman, Grayson County, Texas." An invoice was mailed to defendant on August 29th, for merchandise in the amount of $12,000, reducing his credit balance to $18,500. On September 16th, defendant made another payment of $25,000. He mailed this payment to plaintiff at Sherman, Texas. On October 11th, plaintiff mailed three invoices to defendant for equipment furnished that totaled $81,019.95 in price, leaving defendant with a debit balance of $37,519.95. Other invoices, for a total amount of $861.67, were dated October 24th, October 28th, November 20th, November 26th, November 27th and December 18th. No further payment was made by defendant.

We believe the facts we have recited are sufficient to support the implied finding of the trial court that the defendant contracted in writing to make payment in Grayson County.

 The purchase order is not fatally defective because of its failure to itemize the articles ordered. It sufficiently refers to machinery or articles to be used "on the gin." When it was executed by defendant, the parties knew generally, and were in agreement upon, what was intended by the term "machinery and articles." Parole evidence was properly admissible to explain this intention and thus remove any uncertainty in the order caused by want of a specific listing. 13 Tex.Jur.2d 261, Contracts, Sec. 108. Moreover, the evidence supports a finding that both parties subsequently acted on and executed the purchase order according to their understanding and intention. This conduct removed any uncertainty in the order as to what machinery and articles were purchased. 13 Tex. Jur.2d 259, Contracts, Sec. 107. Furthermore, the failure to specify a time for payment did not render the order invalid; this simply rendered it payable within a reasonable time after performance by plaintiff. 50 Tex.Jur. 615, Sales, Sec. 244.

 Although not signed by plaintiff, the purchase order constitutes a "contract in writing" by the defendant within the meaning of subdivision 5 of the venue statute. Marsh v. Fairbairn (Tex.Civ.App., 1950, no writ hist.) 230 S.W.2d 253, 255; 59 Tex.Jur.2d 443, Venue, Sec. 58. It requires defendant to perform on obligation in Sherman, Texas, which we judicially know is in Grayson County.

If we agreed with defendant's assertion that the purchase order, by its terms, does not fulfill the requirement of the venue statute, we would, nevertheless, sustain plaintiff's contention that when the written order is considered with the invoices, and defendant's actions thereon, the statute is satisfied. In each instance of delivery of merchandise and equipment by plaintiff, an invoice was forwarded to defendant which contained a statement in writing that all bills were payable in Grayson County. There is no evidence that defendant ever objected to the designation in the invoices for place of payment, and the record shows that within a few days after receiving the first invoice, defendant complied with its terms by sending a substantial payment to

plaintiff in Grayson County. The evidence is legally sufficient to support an implied finding that defendant assented to the provisions of the invoices by his acceptance of the merchandise, by his silence, and by compliance. Therefore, the invoices constitute a part of the contract, and defendant is bound by their terms to pay for the equipment in Grayson County. Dowdell v. Ginsberg (Tex.Civ.App., 1951, no writ hist.) 244 S.W.2d 265, 266; Harrison v. Facade, Inc. (Tex.Civ.App., 1962, no writ hist.) 355 S.W.2d 543, 545.

The judgment is affirmed.